**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 07 C 3807 ) |
| STONITSCH CONSTRUCTION, INC., and JOHN ACKERET, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

This is an insurance dispute. Plaintiff and Defendants have filed cross motions for summary judgment seeking declaratory judgment as to the existence or non-existence of a contract for insurance between Plaintiff insurance carrier and Defendant Stonitsch Construction, Inc. ("Stonitsch").

## BACKGROUND

### I.      Relevant Facts

John Ackeret filed a lawsuit in state court against his employer A&D Erectors, Inc. ("A&D"), claiming he was injured on December 6, 2004, while performing work building an aircraft hanger. (R. 68-1, at ¶¶ 4, 8; R. 59-1, Ex. 1A, Ackeret Compl.) In his state court lawsuit, Ackeret seeks to recover both from A&D and from Stonitsch, who had subcontracted the hanger project to A&D. (R. 68-1, at ¶ 4; R. 59-10, p. 1-2; R. 69-1, at ¶ 24.) At the time of Ackeret's alleged injuries, Westchester Surplus Lines Insurance Company ("Westchester") insured A&D, pursuant to a general liability insurance policy between those two parties ("the Westchester

Policy" or "the Policy"). (R. 68-1, at ¶ 1.)

No party has questioned, at least in this lawsuit, whether Westchester has a duty to defend A&D.[1] Rather, with this lawsuit, the parties have cross-sought judgments declaring that Westchester either does or does not owe Stonitsch a duty to defend against Ackeret's lawsuit.

### A. Westchester Policy

Westchester issued a general liability insurance policy to A&D, effective December 1, 2004 through December 1, 2005. (R. 67-1, at ¶ 14.) The Westchester Policy named A&D as the insured, but also contained a provision by which Westchester would insure an additional party named by A&D. (R. 59-10, Westchester Policy, p. 23, FORM B.) Under this provision (referred to as an "endorsement"), the Policy could include as an additional insured any persons or organizations listed in the endorsement who acquire liability in the course of performing work on behalf of A&D. (*Id.*) The endorsement does not list any persons or organizations by name. Instead, in the place where one would expect such names to be listed, the endorsement states: "As required by contract, provided contract executed prior to loss." (*Id.*) The crux of the present lawsuit is whether Westchester was "required by contract" to insure Stonitsch as an additional party.

### B. Subcontract Agreement

Prior to Mr. Ackeret's injury, on May 20, 2004, Stonistch and A&D had entered into a subcontract agreement for work on a project involving the erecting of aircraft hangers ("the Subcontract Agreement"). (R. 69-1, at ¶ 25; R. 67-1, at ¶ 8.) Under the Subcontract Agreement, the only contract at issue in this litigation between Stonitsch and A&D, Stonitsch (as a general

---

[1] A&D was dismissed from the present lawsuit by stipulation of the parties. (R. 52-1, May 6, 2008 Minute Order.)

contractor) employed A&D as a subcontractor for the hanger project. (R. 69-1, at ¶ 25; R. 59-10, p. 1-2.) The Agreement, according to its terms, "has important legal and insurance consequences..." (R. 59-10, p. 1.) The Subcontract Agreement also states that "[p]rior to starting Work the Subcontractor shall procure and maintain in force" various types of liability insurance. (*Id.* at ¶¶ 5.1, 5.2.) Stonitsch admits that the Subcontract Agreement "does not contain a requirement that A&D name Stonitsch as an additional insured on A&D's insurance policy." (R. 68-1, at ¶ 10.) Stonitsch, however, argues that it was the intention of the parties to the Subcontract Agreement to name Stonitsch as an additional insured on the Westchester Policy. (*Id.*)

### C. Certificates

On November 30, 2004, Union Insurance Group, A&D's "up front" insurance company, issued two certificates stating that Stonitsch "is added as additional insured" on a number of insurance policies – including the Westchester Policy – for work performed on the aircraft hangers project. (R. 68-1, at ¶ 45; R. 67-1, at ¶¶ 20-21; R. 15-5, 6.) The certificates state that they were "issued as a matter of information only, and confer[] no rights upon the certificate holder." (R. 15-5, 6.) Westchester has no contract or agreement with the Union Insurance Group. (R. 68-1, at ¶ 48.)

## LEGAL STANDARD

### I. Jurisdiction

Both parties seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. "The Declaratory Judgment Act empowers federal courts to give declaratory judgments in 'a case of actual controversy within its jurisdiction,' but it is not an independent grant of

3

jurisdiction, rather jurisdiction must be predicated on some other statute." *Newell Operating Co. v. Int'l Union of United Auto., Aero., & Agric., Implement Workers of Am.*, 532 F.3d 583 (7th Cir., 2008) (quoting 28 U.S.C. § 2201(a)).  The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, because at the time of the filing of the Complaint Westchester was a Georgia corporation (with its principal place of business in Georgia), Stonitsch and A&D were Illinois Corporations (with their principal places of business in Illinois), and John Ackeret was a citizen of Illinois.

## II.     Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## III.    Illinois Contract Principles

Under Illinois law,[2] the Court treats an insurance policy the same as any other contract and utilizes the same rules of construction. *Geschke v. Air Force Ass'n*, 425 F.3d 337, 342 (7th Cir. 2005). Illinois applies the four corners rule of contract interpretation, which bars consideration of extrinsic evidence when the contract is facially unambiguous and fully integrated. *See TAS Distributing Co., Inc. v. Cummins Engine Co., Inc*., 491 F.3d 625, 636 (7th Cir. 2007) (citing *Air Safety, Inc. v. Teachers Realty Corp*., 185 Ill.2d 457 (1999)); *see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc*., 212 F.3d 373, 380 (7th Cir. 2000). The Court interprets unambiguous contract terms according to their plain meaning. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (citing *Trade Ctr. v. Dominick's Finer Foods*, 304 Ill. App.3d 931, 238 Ill. Dec. 230, 711 N.E.2d 333, 335 (1999)); *see also PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 892 (7th Cir. 2004).

## ANALYSIS

### I. The Westchester Policy

The Court first addresses whether the Westchester Policy requires the existence of a written contract designating a party as an additional insured. The plain meaning of the Policy's terms does not support this argument. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) (Under Illinois law, "contract terms are interpreted according to their plan meaning unless otherwise defined."). The Policy covers an additional insured "[a]s required by contract, provided contract executed prior to loss." The word "written" is not included in the

---

[2] The parties agree that Illinois law governs the Policy and the Subcontract Agreement. *See TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 635 (7th Cir. 2003) (applying Illinois law where parties agreed that it governs).

5

language of this additional insured provision. Nor does the word "executed" necessarily invoke a requirement of a written – as opposed to an oral – contract. In addition to referring to the affixing of a signature to a document, the word "execute" also means "to perform or complete (a contract or duty)." Black's Law Dictionary, Seventh Ed. (1999). Accordingly, the plain meaning of the Policy permits A&D to add an insured by way of either a written contract signed, or an oral or written contract performed, prior to Mr. Ackeret's alleged injury.[3] *See Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 885 (7th Cir. 2004) (holding that contract language was susceptible to only one reasonable interpretation, and therefore not ambiguous); *Forest Glen Cmty. Homeowners Ass'n v. Bishof*, 746 N.E.2d 1285, 1289 (Ill. App. Ct. 2d Dist. 2001).

## II. Oral Contract

Stonitsch has argued that A&D and Stonitsch entered into an oral agreement which constitutes the "contract" referenced in the Westchester Policy. Yet, Stonitsch repeatedly references only the parties' intent, expressed orally, to add Stonitsch as an additional party. Intent alone, however, is not enough – the Policy expressly requires a contract. As discussed above, that contract may be in the form of an oral agreement, but Stonitsch has failed to put forth any evidence pointing to the existence of a specific oral agreement. What is more, A&D's undisputed Rule 30(b)(6) testimony indicates that A&D had no specific conversations with Stonistch concerning adding the company as an additional insured on the Westchester Policy. (R. 62-2, at 35:1-6.) Accordingly, Stonitsch has failed to satisfy its burden on summary

---

[3] As discussed below, Stonitsch has failed to provide the court with evidence of the existence of an oral contract. As such, the Court need not address the issue of what it would mean for an oral contract to be "executed" prior to loss.

judgment as to the existence of an oral contract. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[W]e have consistently held that summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotations and citations omitted).

### III. Written Contract – the Subcontract Agreement

Stonitsch's next argument is that the Subcontract Agreement between A&D and Stonitsch satisfies the "as required by contract" language in the Westchester Policy. Although the Subcontract Agreement between A&D and Stonitsch was signed prior to the date of Mr. Ackeret's alleged injury, Stonitsch concedes that the written terms of the Subcontract Agreement do not require A&D to name Stonitsch as an additional insured. (R. 68-1, at ¶ 10.) Recognizing, as it must, the limitations of the four corners of the Subcontract Agreement, Stonitsch argues that the Court should look to extrinsic evidence to inject such a requirement into the Subcontract Agreement. Because the Court cannot look to extrinsic evidence unless there exists an exception to the parole evidence rule, Stonitsch argues that the Subcontract Agreement is: (1) not a fully integrated document; or (2) ambiguous.

#### A. Integration

Stonitsch first argues that the Court should consider extrinsic evidence because the Subcontract Agreement is not a fully integrated document. If a contract is a complete expression, or total integration, the parol evidence rule precludes the Court from looking outside the contract. *J&B Steel Contractors v. C. Iber & Sons*, 162 Ill. 2d 265, 273 (1994). In non-UCC cases, such as this one, the Court only considers the contract itself when determining whether the

7

contract is a fully integrated document. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 879 (7th Cir. 2005) (citing cases); *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 630 (7th Cir. 1998); *see also J&B Steel Contractors*, 162 Ill. 2d at 270-272. A contract need not contain an explicit integration clause to be fully integrated. *See Davis*, 396 F.3d at 879; *see also J&B Steel Contractors*, 162 Ill. 2d at 271-274; *Home Ins. Co. v. Chicago and Northwestern Transp. Co.*, 56 F.3d 763, 767 (7th Cir. 1995). A writing is "integrated" if it contains such language as imports a complete legal obligation. *Davis*, 396 F.3d at 879.

Here, the Subcontract Agreement is a complete, internally coherent, and integrated legal document. While it does not contain an integration clause, the Subcontract Agreement was signed by both parties, spans ten single-spaced pages, and contains eleven articles covering a wide array of topics from legal to logistical. The Subcontract Agreement, for example, contains provisions discussing detailed subject matter ranging from price and performance to choice of law and legal remedies. *See, e.g.*, *Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 524 (Ill. App. Ct. 2001) (holding that a contract was fully integrated where it "specifically enumerated services for the stated price as proposed by the plaintiff."); *cf. Oldenburg v. Hagemann*, 207 Ill. App. 3d 315, 326 (Ill. App. Ct. 1991) (unsigned "proposal" which "generally outlined the work to be performed" was not a complete agreement). Moreover, the Subcontract Agreement also contains an article (Article 5) specifically addressing the issues of insurance and indemnity. In addition, the Subcontract Agreement incorporates by reference a number of detailed documents, which add further context and completeness to the Subcontract Agreement. Further, the first line of text under the Subcontract Agreement's title states that "this Document has important and legal insurance consequences; consultation with an attorney and insurance consultants and

carriers is encouraged with respect to its completion or modification." Having reviewed the Subcontract Agreement in its entirety, the Court concludes that it is a fully integrated document.

Stonitsch, in an attempt to argue that the Agreement is not integrated, contends that because the writing references a duty owed by A&D to file certain certificates with Stonitsch in the future (but prior to the commencement of work), that the writing is not complete. This argument fails. The requirement to file certain documents after the execution of the contract merely reflects a condition of performance; it does not bear on the completeness of the expression of the parties' intent. The plain meaning of this provision of the Subcontract Agreement does not state that certain terms or conditions of performance are to be gleaned from the later-filed certificates. Nor does the plain meaning indicate that the later-filed certificate will in any manner modify the terms of the Subcontract Agreement. The plain meaning of this filing requirement simply introduces a condition which must be fulfilled (by performing the task of filing) as part of the Subcontract Agreement. It says nothing of additional terms or conditions which are not contained in the Agreement itself.

### B. Ambiguity

In a further attempt to bring extrinsic evidence within the Court's purview, Stonitsch argues that the Subcontract Agreement is ambiguous. Stonitsch's ambiguity argument hangs on one sentence of the Subcontract Agreement – a reference in Section 5.4 to filing "acceptable certificates" of insurance with Stonitsch. (R. 59-10, at § 5.4.) In Illinois, an unambiguous contract "speaks for itself, and the intention with which it was executed must be determined from the language used." *See Davis*, 396 F.3d at 878 (internal quotations omitted) (citing *Air Safety*, 185 Ill.2d at 462). In other words, the Court cannot look to extrinsic evidence when the terms of

9

a contract are unambiguous, *id.*, and parties cannot use extrinsic evidence "to create a conflict completely apart from the contract itself." *Brooklyn Bagel Boys*, 212 F.3d at 380; *Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990) ("If no ambiguity exists in the writing, the parties' intent must be derived ... solely from the writing itself."); *Air Safety*, 185 Ill. 2d at 462-463; *see also Davis*, 396 F.3d at 879. If a contract is ambiguous, however, the Court may examine extrinsic evidence to decipher its meaning. *See Brooklyn Bagel Boys*, 212 F.3d at 380; *see also Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). "[T]here must be either contractual language on which to hang the label of ambiguous or some yawning void . . . that cries out for an implied term." *Brooklyn Bagel Boys*, 212 F.3d at 380 (citing *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (en banc) (lead opinion)). A contract provision is ambiguous if it is subject to more than one reasonable interpretation. *PPM Fin.*, 392 F.3d at 893 (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill.2d 520,530 (1995)).

Here, Stonitsch points to a purported ambiguity in one sentence in Section 5.4 of the Subcontract Agreement. But "language in a contract is not rendered ambiguous simply because the parties do not agree upon its meaning." *Federal Deposit Ins. Corp. v. W.R. Grace & Co.*, 877 F.2d 614, 621 (7th Cir. 1989) (quoting *Reynolds v. Coleman*, 173 Ill. App. 3d 585, 593 (Ill. App. Ct. 1988)). In fact, the contract language singled out by Stonitsch as ambiguous is far from it. The disputed sentence in Section 5.4 states that "Certificates of Insurance acceptable to [Stonitsch] shall be filed with [Stonitsch] prior to the commencement of work." This language is straightforward and precise, it is not "reasonably susceptible to differing interpretations," nor does it suggest a void that "cries out for" an implied term. *See Brooklyn Bagel Boys*, 212 F.3d at 381. Stonitsch has failed to identify an ambiguity in the Subcontract Agreement.

10

Moreover, to the extent the Court could look outside the Agreement in search of some ambiguity, the Court still finds none. The undisputed evidence shows that the parties to the Subcontract Agreement did not believe that the Agreement contained a provision requiring Westchester to insure Stonitsch. Stonitsch offers only subjective extrinsic evidence – in the form of deposition testimony – in an effort to render the facially unambiguous Agreement ambiguous. As an initial matter, this testimony is inherently unreliable. *See Home Ins. Co. v. Chicago & Northwestern Transp. Co.*, 56 F.3d 763, 768 (7th Cir. 1995). More importantly, Stonitsch failed to point to specific testimony suggesting that a particular provision of the Subcontract Agreement is ambiguous or in need of clarification. *See Air Safety*, 185 Ill. 2d at 463 (noting that some lower courts have recognized an extrinsic ambiguity "when someone who knows the context of the contract would know if the contract actually means something other than what it seems to mean").

### C. Certificates

Stonitsch also asks the Court to consider the certificates issued by Union Insurance Group. These certificates, however, are not extrinsic evidence of the Subcontract Agreement's parties' intentions. The certificates were issued two months after the Subcontract Agreement was signed, and as such do not inform an analysis of what the parties were thinking at the time of the contracting. *See TAS Distrib.*, 491 F.3d at 637 ("Illinois courts have interpreted the parole evidence rule to bar the introduction of evidence relating to understandings not reflected in the terms of the contract, *reached either before or at the time of the contract's execution*...") (emphasis supplied). Moreover, the certificates are of little after-the-fact value because they expressly state that they were "issued as a matter of information only and confer[] no rights upon

11

the certificate holder," and that they do "not amend, extend, or alter the coverage afforded by the policies below." (R. 15-5, 6.) In the absence of any evidence that the Westchester Policy covered Stonitsch, the express language of the certificates precludes Stonitsch's argument that the certificates conferred such rights or otherwise extended the Policy's coverage.

**IV.    J.R. Construction**

Stonitsch relies heavily on *W. Am. Ins. Co. v. J.R. Constr. Co.*, 334 Ill. App. 3d 75 (Ill. App. Ct. 2002). That case, like the present case, involved a declaratory judgment concerning additional insured coverage stemming from a work place injury. *See J.R. Constr. Co.*, 334 Ill. App. 3d at 77. There, the insurance company sought a declaratory judgment against J.R. Construction ("J.R.") stating that J.R. was not covered as an additional insured on an insurance policy issued to Altra, a subcontractor of J.R. Construction. *Id.* The insurance company argued that J.R. was not an additional insured under Atra' s policy because no contract existed between Altra and J.R. *Id.* at 78-79. Despite the lack of an underlying contract, the court held that J.R. was an additional insured under the policy. *Id.* at 85.

In reaching its conclusion, the court explicitly stated that it was not relying on the additional insured provision of Alta's insurance policy. *Id.* at 81, 85. The court relied instead on a number of undisputed facts to determine that J.R. was covered by the policy. The court found it dispositive that: Atra orally agreed to provide insurance to J.R.; the insurance company acknowledged that J.R. was listed as an additional insured; and the insurance company's internal documents, as well as documents communicated by the insurance company's agent to J.R, revealed that the insurance company viewed J.R. as an additional insured. *Id.* at 81. Although it is unclear what legal theory that court relied upon to go outside of the additional insured

provision of the insurance policy, none of the facts which caused the court to do so are present in this case. First, Stonitsch produced no evidence that it entered into an oral agreement of any sort with A&D. Second, Westchester never acknowledged that Stonitsch was an additional insured under the Policy. Finally, no documents produced, or authorized to be produced, by Westchester indicate that Stonitsch was covered by the Policy. As such, *JR. Construction* is distinguishable on its facts.

Further, Illinois law does not support Stonitsch's argument that an additional insured may be added under a policy provision requiring a contract, when no such contract exists. *See Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1301-02 (7th Cir. 1995) (in determining the content of state law, federal courts "are obliged to consider the holdings of state appellate courts, but are not bound to do so if we have good reasons for diverging from those decisions" (emphasis added)); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("[U]nder Erie [a federal court's] task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications."); *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004) (in determining the content of Illinois law, federal courts "predict the Supreme Court of Illinois would if it were deciding the case. The decisions of the Illinois Appellate Court are persuasive authority. Although those decisions do not bind us, we shall follow them unless we have a 'compelling reason' to believe that they have stated the law incorrectly." (internal citation omitted)). The Court must give the terms of the Policy their plain meaning, *Utility Audit*, 383 F.3d at 687, which in this case means enforcing the Policy's clear provision requiring the existence of a contract in order to qualify as an additional

insured. *See, e.g.*, *United States Fire Ins. Co. v. Hartford Ins. Co.*, 312 Ill. App. 3d 153, 157 (Ill. App. Ct. 2000) (affirming the denial of additional insured coverage where the insured had orally agreed to extend the coverage, but the insurance policy required that the agreement be in writing). Because Stonitsch has failed to identify such a contract, it cannot prevail.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Stonitsch's cross-motion for summary judgment (R. 60-1), and grants Plaintiff Westchester's motion for summary judgment (R. 57-1) in favor of Plaintiff and as to Count I of Defendant's Counter-Complaint. The Court also grants Plaintiff's motion for summary judgment as to Count II of the Counter-Complaint, because that Count is contingent on Count I. Stonitsch does not qualify as an additional insured under the Westchester Policy, and as such Westchester has no duty under the Westchester Policy to defend Stonitsch in the underlying state court lawsuit.

**Dated:** August 21, 2008

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**